Please call the next case. Will the attorneys who are going to orally argue on behalf of the parties please come to the podium and introduce yourselves. Attorney for the appellant. Good morning. My name is Tim Hammersmith. Mr. Hammersmith. Janet Barnes as attorney for Robert F. Harris, who is the plenary guardian of the person in estate of Arthur Lynch. Barnes. Good morning. Hal Morris on behalf of the estate of Arnold Lynch Hudson. No, Hal Morris on behalf of the public administrator. Okay. As appellees, you'll have to divide your 15 minutes however you would like to do so. Appellant, you're going to have to reserve from your 15 minutes that portion you want to use for rebuttal. Very good. Mr. Hammersmith, you may proceed. May I proceed, Your Honor? Thank you. I'd like to reserve five minutes for rebuttal. Again, we are representing Jose Adame. He is the appellant in this case and citation respondent. And we are seeking from this court a reversal of the Circuit Court of Cook County granting of summary judgment to the estate of Arthur Lynch and the estate of Arnold Lynch. The underlying action in this court, in the Circuit Court, concerned a citation to recover assets filed against Adame amongst other respondents. As to Adame, it was a single-family home located at 5440 South Lawndale in Chicago, Illinois. On June 24, 2005, Mr. Adame purchased that home from Arnold and Arthur Lynch. On the date of the transaction, Arnold Lynch was an adjudicated ward of the court. Did Mr. Byra participate in the sale? We're all very familiar with the facts, so let's get to the heart of the matter. Although Arthur and Arnold signed the warranty, the public guardian, I think, or administrator of one of the two briefs, actively promotes the idea that Mr. Byra sold the property. So what was that? Well, Mr. Byra's involvement would have been from the Arnold and Arthur Lynch side, of course, not Adame. We don't – in Mr. Adame's deposition, that was covered. And the way Mr. Byra was originally involved was Mr. Adame worked with, I think at that time, girlfriend. Did he participate in the sale? I think he was there at the closing, I believe, if I recall correctly. He was. So really the gist of the problem was that he did not go before the probate court and get authorization for the sale on behalf of Arnold. That's correct. Okay. So – but he was there, he was aware of it. Yes. And he was also the – excuse me if I can, Your Honor – he was the court-appointed guardian, as I think you're alluding to. Would you let me understand that? Okay. Okay. Okay. So what's lacking here is the probate court's sanction of the sale. As to Arnold Lynch. As to Arnold. Yes, sir. Correct. Okay. And so the circuit court of Cook County ruled that Arthur's conveyance was also void because he signed the same transaction document as Arnold. And we believe that's where the court erred. We don't believe that is consistent with Illinois law because Arthur had his own individual joint tenant interest in the property. He conveyed that to Adame by warranty deed. It's a statutory form of warranty deed, very fundamental under real estate law. He conveys and warrants all his right, title, and interest and agrees to defend. Very, very fundamental. We believe it's also important to note that deed of Arthur was without condition. It's very plain on its face, an Illinois statutory form of warranty deed without condition, and there Arthur is conveying his own individual interest in joint tenancy. So we could – we could posit would it matter if Arnold and Arthur signed two separate pieces of paper? No. Or one piece of paper? No. If there were 100 joint tenants and they sold one – they signed one piece of paper or 100 pieces of paper, it wouldn't matter because they're all conveying their own individual interest in the property. So your position is at the time of the sale of the property, Arnold and Mr. Adame became tenants in common? That's correct, sir. Okay. And Arthur's gone. He got his share of the proceeds. He had capacity. Correct. And he conveyed his undivided one-half joint tenancy interest. Yes, sir. And that Arthur – and that capacity – yes. Then you claim that the after acquired title would then, when Arthur – when Arnold died, his interest passed to his brother, and under after acquired, that interest passed to Mr. Adame. Yes, sir. No harm, no foul for Mr. Adame's perspective. Well, I – So what interest – how would the after acquired title doctrine apply when Arthur, at the time of the sale, was only conveying his undivided one-half interest? He wasn't saying I'm conveying the entire interest, was he? He was conveying whatever interest he had at that time as well as any subsequently acquired interest because that's what the after acquired title is all about. Isn't that premise – excuse me – isn't that premise on the notion that at the time of the sale, Arthur was conveying more than he thought he had, and he was only conveying under these facts his undivided one-half interest as a joint tenant? Well, because Arthur conveyed as fee simple absolute under the Conveyances Act, and that's the key, because the Conveyances Act provides that when you convey by warranty deed, it's fee simple absolute, that is all your then interest, present interest, but then any after acquired title interest. Where do you get that? That's in the case of Frick v. Darst, which we cite. Right. But Frick, if you take that on that proposition, Frick goes on to say that you can only convey what you have, and you can't convey more than what you have. So, you know, Frick cuts both ways in your argument. Respectfully, Your Honor, I would say that Frick says, quote, in all cases of covenants of general warranty, any title subsequently acquired by the grantor is held to have been acquired to strengthen the title of the grantee and to prevent its failure and that it inures to the benefit of the grantee, end quote. That's the last paragraph of Frick. All right. Okay. So that's your position. Yes, sir. So what would you be seeking from this Court at this point? Because, quite frankly, there are a lot of loose ends here. So if you were successful in reversing the order of the circuit court, where does that put you? Well, I would say a couple of different responses. Number one, I think under the facts of this case, because they are somewhat unique in the after-acquired doctrine, acquired title doctrine applies, this Court probably could, within its power, vest a dame with title. I think that's a possibility, because if you found Arthur's deed effective and found that the application of the after-acquired title doctrine applied to this case, which Judge Kawamoto did not agree did, you could, I think this Court, within its power, could vest a dame with title. Now, to specifically point two, gets us back to the circuit court, there's issues of material fact, such as, I'm sorry. Gets you back to the circuit court in what posture? As a joint tenant with the estate of Arnold? Or what? Let's assume this Court doesn't accept your after-acquired title theory. Then, if that's the case, then we would be back, and it acknowledges Arthur's conveyance, then a dame would be a tenant in common with Arnold's estate. Which no longer, well, his estate then passed to Arnold. It seems that it would under the undisputed facts that Arthur is his sole heir. But I think if the Court buys that, that Arthur inherited the property, or accepts that, then the after-acquired title doctrine is a pretty easy to follow thereafter. But one way or the other, Mr. Adame is a tenant in common with either the estate of Arnold or Arthur Lynch. And, you know, partition is really potentially. Would he be entitled to get his proportionate share of the purchase price back from Arnold's estate? Because Arnold benefited, the estate benefited, but for the purported misappropriation of the proceeds. We think so, because we think that Mr. Adame did no wrong in this case. He paid fair market value for the property. Is that now resolved because of the order of the circuit court? Or does that have to be resolved on remand, if it is remanded? I would think that that issue still needs to be resolved, because Judge Kawamoto did not address the equities vis-à-vis Adame. And there are certainly questions of fact as to whether Mr. Arnold Lynch benefited from the transaction, or to the extent, because we know he benefited some. His mortgage was paid off. He had a mortgage on the property that was paid at closing. And there was $78,000 in proceeds available. Now, public guardian and public administrator assert that Mr. Braia misappropriated that money. The pleadings are clear. Mr. Braia denies that. So we would have to review, the circuit court would need to review, you know, to the extent that Arnold Lynch benefited from the sale. To the extent that he did, I think the case law is pretty clear, and the equities favor Adame. There probably would need to be some compensation from Arnold Lynch. At the time Arnold took the conveyance, could he be chargeable with any actual or constructive notice of Arnold's disability? I would say, Your Honor, that he would be charged with technically, yes, constructive notice, because there was a court case pending. Actual knowledge, Mr. Adame in his deposition and his affidavit denies any actual knowledge or asserts he had no knowledge, as does his attorney, Alicia Plonka. Okay. Well, if he had constructive notice, wouldn't that disentitle him to the benefits of being called a bona fide purchaser? I don't think so, because the courts, in dealing with disabled persons, they discuss weighing of the equities. That would be one component, but then your actual good faith and actual benefit to the disabled person, equities being plural, you consider more than one factor. That's a technical, we all know that there's constructive notice and there's some technical things you're charged with, but the equities are more than one factor. But this was never part of the circuit court's inquiry, was it? It was not, Your Honor, because the court simply ruled that because Arnold was a disabled person, his transaction was void, and because Arthur signed the same transaction document, the deed, that Arthur's conveyance was also void. Counsel, is there evidence from the deposition and in the record on summary judgment what Mr. Dahme's perception of the brothers were when he met them? He met them on about three occasions, including the closing, right? He did. There is testimony in that respect, and I think he describes it as something like they seemed happy-go-lucky, or at least one of the fellas, something to that effect. In his mind, they didn't appear disabled. So there is evidence in the record as to what his perceptions, as was Alicia Plaka, his attorney, who had stated that she had no inclination that they were disabled. And I guess I would assert what also favors Mr. Dahme is Elizabeth Mann, and Arnold and Arthur's very own attorney. You know, she's not been deposed, but one would expect that if her perception was there was something wrong, as the attorney, you're obligated to ask some questions. She's a third party, correct? She is, I think, a third party through PNTN. Yes, she is, Your Honor. She was the agent of the title company, right? She was the agent of the title company, correct. And she's the one who prepared the title commitment and acted as title agent as well as attorney for the Lynch brothers. So under your view of the disposition of this appeal, the case should be remanded for factual hearings as to bona fide purchaser status of Mr. Dahme? Well, that would be part of it. But we also believe that the court erred when Judge Kawamoto erred when she ruled that Dahme was vested with no title. Right. We believe, I'm sorry. Okay. So you're saying, though, if that is true, then it should be remanded in the status of the parties at that point would be Dahme and the estate of Arnold are tenants in common? If it's remanded in that posture. This is your position. Well, actually, our position is that Dahme is vested with the entire ownership of the property because of Arthur's deed and the after-acquired title doctrine, picking up Arnold's share. So we believe Dahme is fully vested. If the court disagrees and doesn't accept the after-acquired title but accept the conveyances from Arthur to Dahme, then, yes, that would put Dahme as a tenant in common, ownership through Arthur's share, a tenant in common with somebody, and it's probably Arnold's estate. Somebody would be Arnold's estate. It would be Arnold's estate. Arnold's estate. Yes, sir, which may vest. Okay. And wouldn't equity then dictate that the consideration paid for Arnold's share be returned to Dahme? You're trying it. Yes, sir, it would. It would. Unless it was shown that he was not a bona fide purchaser or that he took with constructive notice. I don't agree, Your Honor, about the constructive notice aspect. I would think, I believe that the cases really provide that constructive notice alone, technical constructive notice does not put you out of the bona fide purchaser because, again, the court considers the equities. In some of the cases where consideration was not returned, what was the purchase price vis-a-vis the real value? Did the negotiating buyer know, have actual knowledge? Mr. Dahme, we assert, did not. Also, too, one of the cases talks about a title abstract would have shown any estate open in a conservatory state. Well, this title commitment did not, we assert, prepared by their own attorney. So, respectfully, I don't agree that he would be foreclosed. So we'll reserve a couple of minutes if we can. Sure. You'll have five minutes on rebuttal. Thank you. Thank you very much. Ms. Barnes? Before I get into the meat of my argument, Justice Pierce, you asked counsel what would happen if you reversed the trial court's summary order, and he answered that you represent Arthur, correct? I represent Arthur. Is Arthur still alive? Yes, he is. He is currently 68 years old. He has public aid benefits and lives in an assisted living facility for disabled adults. He is a guardian? Yes. Okay. Mr. Counsel argued that this court had the authority to vest title, and, Mr. Dahme, that is not correct. Why not? If this court reverses, then it would go back to the trial court for further proceedings on the original citation petition, which ---- So you get a second shot at everything? Yes, we get a second shot at everything. How can that be fair? I mean, that's a disturbing thing to me about this record. We have a situation where the facts, let's assume they're taken as true as Arthur and Arnold sold the property, one of the brothers had capacity, one of them didn't, in the best case. It appears that a fair price was paid for the property, and that the net proceeds were used to pay off their mortgage, and the net proceeds were then distributed to them. Now, let's assume that your side is correct, that they were misappropriated at that point. They were. Well, let's assume it, okay? It seems to me that at that point the complaint is that they should have gotten their share of the proceeds. Had you and your colleague gotten involved a month after this transaction and brought it to the probate court, it seems like an argument could be made that the transaction itself was okay, all right, but they didn't get the money. So where's the money? Who pays us the money? Now we're six years into this, or eight years into this, and you have somebody living in a home that apparently paid market value for it, apparently was, you know, may have had constructive notice but didn't have actual notice, had a title policy giving him clear title, and now the court has dispossessed that party, given you and your colleagues, you know, on behalf of your clients, title to a piece of property with $145,000 of mortgages on it. So what is this doing for everybody? In this case, the trial court properly entered a summary judgment because there was no material fact that warranted trying because the deed that the brothers signed was void ab initio as a matter of law. Okay, what law voids the transaction as far as Arthur is concerned? The probate act is really clear that as far as Arnold's concerned, Arnold had no capacity to execute the deed. That's clear under the probate act. But it's effective, my reading of it is, only as to Arnold. It doesn't give the probate court under the probate act the right to restrict the ability to alienate Arthur's interest, assuming Arthur is capital. Under both Denef and Hostie, both the Illinois Supreme Court and this court have said where the buyer intends to purchase the entire interest in the property, not just half an interest, but the entire interest, and the property is held by joint tenants, which in this case are the brothers, there is no valid contract without the signature of both of the parties. Well, that's really on the offensive move of the buyer to enforce the contract. Right? Here we have the defensive move of the buyer to retain the benefit of the contract. There was no contract. Well, you say. That's correct, Your Honor. And Judge Kalamoto says. Yes. There was never a valid contract because the deceased brother did not have the capacity to sign it. The entire conveyance is void. But he wasn't conveying the entire property. He was conveying his undivided one-half joint tenancy interest. That's all he could convey. But at the time of the conveyance, it was the intention of Mr. Adami to purchase the entire property. I can't tell you what the intent of the brothers were. One was a judge disabled, and the other one was also disabled by illiteracy and mental retardation. Well, but there's been no fact-finding on that. That is correct. There is fact that Arnold was a judge. Did you waive the argument of bona fide purchaser by taking the position that you did in front of Judge Kalamoto that we are relying on only the position that the contract is void in its entirety? No, we did not. Mr. Adami is not a bona fide purchaser. Clearly, he says he didn't have actual notice, but he actually had constructive notice and he had actual notice. Well, I understand that, but you took the position with Judge Kalamoto that forget all that, Judge. The contract is void because Arnold signed it. And because Arnold signed it, the entire document is of no force in effect. But we did not. Don't you give up the argument of in addition to that, Mr. Adami was not a bona fide purchaser? Mr. Adami was not a bona fide purchaser. He is charged with knowing what was in the chain of title. He was provided a copy of the property insight or the chain of title which. Okay. Go ahead. But you understand my point. Yes. My point is that's not what you urged Judge Kalamoto to do. You urged Judge Kalamoto to find in your favor solely because Arnold was lack of capacity. We did urge Judge Kalamoto to do that, but we did not give up the argument that Mr. Adami was not a bona fide purchaser. We clearly made that argument before Judge Kalamoto. Okay. So, you know, I hate to ‑‑ this is really an interesting sad situation because of the situation of the brothers, frankly. But you now have a piece of property under Judge Kalamoto's order that is burdened with one mortgage for $145,000 and a second mortgage apparently. We don't know what that's valued at. The issue of the second mortgage was never brought up. But at least $145,000 piece of property that the property is burdened with. That's what your two estates have. Now what are you going to do with it? Mr. Adami is not entitled to any repayment. What are you going to do with this property now that you have it? That lien is against the property. It's the only asset other than public aid that Arthur has. I agree. And it's burdened with a $145,000 mortgage. Wouldn't you be better off getting the net cash that you should have gotten in the first instance and be rid of this property? No. Well, practically speaking, Mr. Adami has a remedy here. What's that? He has a claim through his title insurer, PNTN, for a defect in title. Okay. Did he file that? Is that part of this proceeding? It's not part of this proceeding. Right. But he does have a remedy. He also has a claim against the, well, there's a lot of things here. But again, what's to the benefit of the two estates? Your Honor, this court's concern is with the disabled adult. Right. Because both the brothers are favored in the eyes of the law, and so this court should rule in favor of making them whole, not rule in favor of making Mr. Adami whole, who didn't come to the deal with clean hands. Making them whole would be a return of the property? Yes. With a $50,000 mortgage on it? Yes. Okay. Yes. How does one do that? Well, practically speaking, the judge already gave the property back to Arthur. So the property is his. With a $145,000 lien against it at least, right? That doesn't seem too good for Arthur and Arnold, does it? Not to me. For us. Again. So what I'm suggesting is that this case, in my humble opinion, screams for a resolution amongst everyone to do what's in the best interest of all the parties. In the way the posture is now, the two disabled estates, or one decedent's estate and one disabled estate has a piece of property burdened with definitely two mortgages, totaling at least $145,000. So we have a displaced purchaser who's out the month. The burden against the estate is Mr. Adami's responsibility. It's not the brother's responsibility. You think? Yes. You think that's the way the bank looks at this? I don't. They have a lien against that piece of property and they can foreclose on it at any time. Counsel, can I just clarify something? You have T&H Mortgage named as a respondent. What's your action against them? Are you saying you'll avoid the mortgage? At this point, there is no more claim against either P&T or the mortgager because Judge Kawamoto gave the brothers the house. So the mortgagee still has a lien. So if the house has been granted with a lien on it, but I'm trying to find out why T&H Mortgage is a respondent. Did you name them? We did originally name them. For purposes of seeking some relief from the mortgage? We did. We asked for either the house or the value of the home, which is why we named the title insurer P&T but because the judge gave us the house, gave Arthur the house, all the claims that are remaining against the title company are not there anymore. The argument before Judge Kawamoto said, Judge, let us be clear. We want either $79,000 or the property, not both. Correct. We don't want both. Judge Kawamoto gave the brother, gave Arthur the house, and that is what. What did she do with the mortgage? She has no authority to do anything with the mortgage, does she, or did she? I don't know. Well, I don't think so.  No, that's the problem. See, that's why lawyers should be encouraged to resolve the problem, not look to the courts to try to figure out what to do next. I mean, we can deal with what you brought to us, but all of us are struggling with and now what? Again, Your Honor, I think the trial court properly entered summary judgment. Again, the entire conveyance was void from the very beginning because the deceased brother could not sign the deed, so the entire transaction was void. And again, I say to this court that it has a duty to protect the interests of the disabled person, and in that case it's both of the brothers. Both of the brothers were disabled, one by incapacity, and Arthur is now disabled by mental retardation and illiteracy. So I think this court should You would agree there's been no finding as to Arthur? There has been no finding as to Arthur. That is correct, and that was not something on which Judge Kawamoto based her decision. On that note, may I suggest that Mr. Morris be allowed five minutes to make a comment? I will. But in closing, I would ask this court to affirm the trial court's summary order. Thank you. Five minutes, sir. That should be fine. Good. Let me in large measure put my notes aside and perhaps address the court's questions. Right. I think what's important is to put this into a procedural posture. This case is before this court on a 304A finding. Right. As a result of that, only one issue was decided with finality by the trial court, and that is the issue with respect to the validity, we'll say, of the transfer. The other questions that the court has raised regarding the mortgage, the monies, the tenancy, et cetera, are issues that would still be ripe for adjudication in the trial court, and the trial court recognized that. So when we look at the equities that counsel spoke of and that the court spoke of, the trial court specifically recognized that. In its order of 1026 in 2012, the court made a finding when it was addressing claims made by Mr. Adame that those claims could be then adjudicated should this court affirm. So I think the specific ---- These claims being what? Refund by purchase price? It's whatever claims he has effectively in two ways, one against the estate of the disabled person's estate. What the trial court ---- And those claims would be what? Return by purchase price? They could be a variety of things. They could be return by purchase price. They could be some sort of claim if he wants to make an argument, if this court would decide that he has rights to part of the property, not all of it, for partition. I don't think so. He may also have claims against his title insurer, because as the court has quite candidly recognized, the public record is clear that Arnold was adjudicated disabled. That was public record. So it seems to me, in my humble opinion, he has a pretty good claim against his title carrier that he didn't get good title because he couldn't get title. So I think what the court has recognized is what the trial court also recognized is that when you look at the case the way it comes up here, it comes up only on a 304A finding with respect to the transfer, not with these other issues. The other issues can still be decided by the trial court, because to put it kind of in a vernacular or colloquial, there's like a springing order that if this court affirms, these other actions can then spring back to life. There were claims filed in the trial court. The one against the estate was dismissed as premature, because until there's a decision here, there may be no claim against the estate. The one against the disabled estate was specifically reserved in the 1026. So I think that's important to consider, that there's no windfall that's going to occur here, because there still is a litigation possibility. There is no issue with respect to whether, as the Court pointed out, there's a waiver. I'd submit there is not any waiver of other claims, if you would reverse, because although it proceeded in the trial court on this question of void as a matter of law, there were still other issues that it could be void for other reasons. You've heard of them. But didn't your side give that up and just hang? I don't think we were. You've heard Judge Kalamata just on its void, void, void. Yes. If we found that it wasn't entirely void, then you're getting a second bite at the apple by saying, well, okay, now we're going to go after Mr. Adami's BFP status. I don't think we're getting a second bite at the apple because of the way it once again came up. It didn't come up as a final judgment under 301, but it came up as a 304A appeal, and therefore it only came up on that very narrow issue. If it would go back on remand, I would submit that any of these arguments could be brought. And the reason I think that's important is when you put it back into context, this arises, remember, in a citation proceeding. And although summary judgment is typically a de novo review, in a citation proceeding, we look for a standard of review as to whether the manifest weight of the evidence supported the result. Here, the Court found that. Let me interrupt, though. But, see, this is, it's intriguing that Judge Kalamata said, if Mr. Adami prevails on appeal, then the second part of my order will go into effect against the title party. Now, would you accept that, that if this Court ruled in favor of Mr. Adami and held that the transaction somehow was valid at the time of the sale, he gets full title, and therefore, as I read Judge Kalamata's interesting order, that now that Mr. Adami is in favor of Mr. Adami, would that be acceptable to the two Estates, $79,000 that they should have received at this closing as the net proceeds? That could be one result of what you've just described. I don't think that's necessarily the only result that could occur. Well, would that be a result acceptable to the two Estates? Would it be acceptable to the two Estates? If, because of the way it comes up and because there still would be questions, I believe, whether there would be a full restitutionary remedy for Mr. Adami, I don't think it would be acceptable on a remand without further proceedings. Well, forgetting Mr. Adami, he would have title, free and clear. I don't know how that would happen because of the issue of the void nature of Arnold's vacants, right? Correct. But really, it seems to me that what the two brothers missed were the net proceeds. Assuming everything was on the up and up at the get-go. I know that's a stretch. And that's truly, I think, the predicate that's missing here. If everything, as you point out, is on the up and up, if you and I sold something with each other, that's all one of us could expect would be the net proceeds. Right. But here, I'd submit that's not the case that's presented because of the unfortunate circumstance of these two brothers. But what more could they have expected at that time? What they could have expected at that time is no sale. And the reason they could have expected no sale is Arnold, certainly as the Court points out under the Probate Act, could not sell under these circumstances. And Arthur, we have not reached this factual question yet, probably could not have either. But even if at the time he's deemed to be competent, the best he could sell is what he owned. Right. But because of, under other cases, the full disability of Arnold at the time, the whole transaction would fall. And I think, therefore, what everyone could have expected looking forward at the sale is that it would never have occurred. And if it never would have occurred, there would never have been these additional monies paid, et cetera. And that's why I think the trial court specifically left other remedies open to Mr. Adame, should this Court affirm. And that's why it's equitable, as counsel points out, for this Court to affirm and let those remedies play out then at the trial court level. I must move this along. Thank you very much, sir. Thank you. Mr. Hammerschmidt. Thank you, Your Honor. I would just like to just respond to the case law cited on behalf of, I believe it was the estate of Arthur Lynch, Dink, Diniff, and Hostie. Those cases concern contract formation. And in those cases, we, of course, have a fully consummated transaction here. So those cases are factually distinguishable. Plus, as I tried to point out earlier, or in our briefs as well, Arthur's conveyance is without condition. And in those cases, one joint tenant who was negotiating for a sale conditioned his or her performance on their other joint tenant joining in that conveyance. And the Ennis v. Johnson case is really the Supreme Court case, the rule, you can certainly condition your conveyance on your joint tenant joining. But if you don't and you contract, you're obligated to sell, just as Mr. Johnson was in Ennis v. Johnson, notwithstanding the fact that the buyer wanted the whole property. So that's what they assert as well in their briefs. Oh, Adam, I wanted the whole property, so he gets nothing. So it goes through the whole transaction, buys and sells, consummated transaction, and gets nothing. That doesn't make any logical sense, nor do I think that that's the law. I think what we would be doing is restraining an alienation of joint tenant interest. And I'd like to also respond. I think the Court pointed out, I believe, that Judge Kawamoto kind of entered an alternate or contingency summary judgment against PNTN. And just to clarify, what we believe the order was from the Court, if we're successful, then there's a contingent PNTN, summary judgment against PNTN that's available for the estates. I know that there were several references to disabilities, again, of Arthur, but I think the Court is clear that was stipulated with Judge Kawamoto that that's not what they were basing their decision on. And I have nothing further unless the Court does. Thank you, sir. The Court will take this matter under advisement. The Court is adjourned. I would like to encourage both sides and the title that the case is still alive, obviously, but legal fees, time, the best interests of everybody in the judgment of this one justice requires consultation amongst the parties to resolve this so that the equities on all sides can be addressed. Further litigation of this is not productive. Thank you.